### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Gary McNeal, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:19-cv-01072 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| City of Blue Ash, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### OPINION & ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendants City of Blue Ash ("Blue Ash"), David Waltz, and Scott Noel in their official capacities (Doc. 28) and the Motion for Summary Judgment filed by Defendants Waltz and Noel in their individual capacities (Doc. 29). Plaintiff Gary McNeal filed a combined Response in Opposition. (Doc. 55). Defendants filed respective Replies. (Doc. 56) (official capacities); (Doc. 57) (individual capacities).

### I.   BACKGROUND

Plaintiff worked for Defendant Blue Ash as a police officer from July 2001 to November 2018. (Doc. 25-1 PageID 458); (Doc. 27 Gary McNeal Depo. PageID 608, 636). Prior to working for Defendant Blue Ash, Plaintiff worked as either a patrolman or police officer in other jurisdictions such that, when combined with his service for Blue Ash, he has a 33-year history of employment in law enforcement. (*Id.* PageID 638-41). Defendant Blue Ash terminated Plaintiff's employment on November 28, 2018. (Doc. 25-1 PageID 458). Plaintiff was 63 years old, and the oldest police officer employed by

Defendant Blue Ash, at the time of his termination. (Doc. 27 McNeal Depo. PageID 605, 694).

Defendant Blue Ash is a municipal corporation organized pursuant to the laws of the State of Ohio, located in Hamilton County, Ohio, and Plaintiff's former employer. (Doc. 14 ¶ 5). Defendant Waltz is the City Manager for Defendant Blue Ash. *See* (Doc. 25-1 PageID 458); (Doc. 27-7 PageID 1000-34). Defendant Noel started working for Defendant Blue Ash as a police officer within a year after Plaintiff started and, in December 2017, Noel became the Chief of Police. (Doc. 27 McNeal Depo. PageID 654); (Doc. 29-1 Scott Noel Decl. ¶ 1).

In 2013, Plaintiff elected to participate in the Ohio Police and Fire ("OP&F") Pension Fund Deferred Retirement Option Plan ("DROP"). *See* (Doc. 27 McNeal Depo. PageID 605-07). "Members who are eligible to retire can enter the DROP program by delaying retirement and continuing to work." *Collins v. Collins*, 2015-Ohio-3315, ¶ 3. "The DROP program . . . provides an incentive for certain long-term OP&F members to remain in their positions for another three to eight years after they become eligible to retire." *Meeker v. Skeels*, 2010-Ohio-3525, ¶ 3. "When a member of the [OP&F] elects to participate in DROP, the member ceases to accrue additional service credit, but forgoes receipt of the monthly pension benefit that would otherwise be payable to the member upon retirement." *Archer v. Dunton*, 2019-Ohio-1971, ¶ 12 (citing Ohio Rev. Code § 742.441). "While the member continues to work, those monthly pension payments . . . are deposited into a DROP account." *Id.* (citing Ohio Rev. Code § 742.443(A)). At the time that Plaintiff was terminated, he was about six years into his eight-year DROP program. (Doc. 27 McNeal Depo. PageID 880). As a result of his termination, Plaintiff lost

two years of his DROP participation. (*Id.* PageID 607-08).

Sometime in 2016, and after Defendant Blue Ash provided Plaintiff with his 2015 evaluation scores, Plaintiff challenged those scores to his supervisors.[1] (Doc. 27 McNeal Depo. PageID 808-10). After Plaintiff questioned his scores, these same supervisors assigned him the task of conducting a traffic survey regarding the intersection of Plainfield Road and Hunt Road in Blue Ash. (*Id.* PageID 808). Plaintiff had to meet with two of his supervisors on a weekly basis to update them on the progress of this traffic survey assignment. (*Id.* PageID 809). Plaintiff questioned why Defendant Blue Ash assigned this survey to a single police officer instead of to Defendant Blue Ash's traffic safety department. (*Id.* PageID 809-10). No other police officer was assigned to this traffic study as part of his or her 2015 annual evaluation scores or otherwise (*Id.*) Plaintiff believes that Defendant Blue Ash assigned him this traffic survey as punishment for questioning his 2015 evaluation scores. (*Id.* PageID 810).

Plaintiff received six official disciplinary actions from Defendant Blue Ash between April 2016 and July 2017. First, on April 21, 2016, Defendant Blue Ash issued documented counseling for Plaintiff's failure to ensure that his microphone was turned on during a traffic stop. (*Id.* PageID 657-58). Plaintiff's supervisor for this violation was Defendant Noel, then a sergeant. (*Id.* PageID 656-58). Second, on December 15, 2016, Defendant Blue Ash issued an oral reprimand to Plaintiff for failing to turn in training certificates that Defendant Noel, then a lieutenant, had requested. (Doc. 27-7 PageID 1002, 1033). Third, on December 27, 2016, Defendant Blue Ash issued a written reprimand to Plaintiff for failing to complete or supplement two police reports as requested

---

[1] Plaintiff does not state with which supervisors he challenged his scores.

by Sergeant Gerhardt. (*Id.* PageID 1033). Fourth, on January 3, 2017, Defendant Blue Ash issued a one-day suspension without pay to Plaintiff for a 30-minute delay in responding to a noise complaint detail in a neighborhood that was under construction. (*Id.*) Plaintiff's supervisor for this violation was Sergeant Gerhardt. (*Id.* PageID 1035). Fifth, on July 24, 2017, Defendant Blue Ash issued a 3-day suspension without pay to Plaintiff for failing to have the correct "return to work" form after an approved 6-week medical leave after he suffered an on-duty injury. (*Id.* PageID 1033). Plaintiff's supervisor for this violation was Defendant Noel, then a lieutenant. (*Id.* PageID 1035). Sixth, and also on July 24, 2017, Defendant Blue Ash issued a 4-day suspension without pay to Plaintiff for failing to submit narrative supplements on a report as requested by his supervisor, Sergeant Gerhardt. (*Id.* PageID 1033, 1035).

On the day that Plaintiff received the official sixth disciplinary action, he spoke with an employee in Defendant Blue Ash's Human Resources ("HR") department about his belief that certain of his supervising officers were trying to "paper trail" him out of the police force. (Doc. 27 McNeal Depo. PageID 804-07). Plaintiff, though, did not file a formal complaint with HR. (*Id.*) However, on September 4, 2017, Plaintiff submitted a written response to the official sixth disciplinary action, to his supervisor in charge that day, though Plaintiff does not remember which supervisor that was, for placement in Plaintiff's personnel file. (*Id.* PageID 801-05); (Doc. 27-8). In the written response, Plaintiff reiterates his belief that there is a "continued and deliberate overreach of discipline" directed towards him by certain supervising officers and states his belief that "discipline can be an effective management tool when administered fairly without regard for age, race, [or] gender." (Doc. 27-8).

4

On June 26, 2018, Plaintiff was dispatched as the primary officer by the Hamilton County Communications Center ("HCCC") to the Frisch's restaurant location at 9070 Plainfield Road. (Doc. 27 McNeal Depo. PageID 739-41, 750). The call initially came in reporting that a male subject was down in the restaurant's bathroom due to a suspected overdose, but was soon thereafter changed to report that the subject was not a possible overdose and, instead, was not breathing and had a heart condition. (*Id.* PageID 742-43). The Blue Ash Fire Department dispatched an ambulance, also known as the "life squad," to the scene. (*Id.* PageID 744). Before anyone from either the Blue Ash Police or Fire Department arrived on scene, the HCCC dispatched that someone at the restaurant began administering CPR to the subject. (*Id.* PageID 746-47).

Plaintiff was dispatched to respond and thus had the primary duty to respond; however, Police Officer Baumgartner, Sergeant Edward Charron, and Defendant Noel—now Chief of Police—each also responded to the scene. (*Id.* PageID 754-57); (Doc. 27-7 PageID 1004-05). Officer Baumgartner self-reported to the scene. (Doc. 27-7 PageID 1005). Sergeant Charron reported to the scene as the secondary and supervising officer, as a supervisor usually responds with a police officer when there is a dispatch for a possible overdose or non-breather. (Doc. 25 Scott Noel Arbitration Testimony PageID 340); (Doc. 27 McNeal Depo. PageID 757). Defendant Noel reported to scene for two reasons. First, he went because of the report of a possible overdose or non-breather and testified that, if there was "going to [be] a deceased body" at "noon on a weekday in a public building in the City of Blue Ash" then "at some point a member of the command staff or members of the command staff would typically show up on those details." (Doc. 25 Scott Noel Depo. PageID 340). Second, he went because wanted to conduct an

unannounced spot check on the response-time because, in his view, Plaintiff and Sergeant Charron had respective histories of not responding to dispatches in the manner that they are supposed to respond. (*Id.* PageID 340-41).

Plaintiff took one minute and 52 seconds from the time of receipt of the initial dispatch to leave the police station and get into his police vehicle. (Doc. 27 McNeal Depo. PageID 752-54). Once in his vehicle, Plaintiff read the details of the dispatch and waited for Defendant Noel's police vehicle to go by Plaintiff's vehicle, and these two actions took Plaintiff 52 seconds before he began moving his vehicle to drive towards the scene. (*Id.* PageID 753-55). When Plaintiff began driving, the life squad was already ahead of him and en route to the scene. (*Id.* PageID 758). While en route, Plaintiff exercised his discretion to not engage his police vehicle's lights or siren based on the information he had, namely that it was no longer a suspected over-dose, CPR was in-progress, the life squad was ahead of him, and the scene was one-and-a-half miles away. (*Id.* PageID 758-60). Plaintiff, however, did not notify dispatch that he chose not to engage the lights or siren. (*Id.* PageID 758). Plaintiff concedes that, per Blue Ash Police Department Policy, if an officer uses his or her discretion to respond without lights and siren, then the officer must notify dispatch. (*Id.* PageID 752). Plaintiff acknowledges that he should have notified dispatch when he decided to not respond with lights and siren en route to the restaurant, and he failed to so notify in this instance. (*Id.*)

Defendant Noel was the first from the Blue Ash Police Department to arrive on the scene. (Doc. 25 Noel Arbitration Testimony PageID 341). Plaintiff and Police Officer Baumgartner subsequently arrived at the scene at the same time, followed by Sergeant Charron. (Doc. 27-7 PageID 1005-06).

On July 5, 2018, Defendant Noel ordered Lieutenant Pohlman and now-Lieutenant Gerhardt to conduct an internal investigation into Plaintiff and Sergeant Charron's response to the June 26, 2018 dispatch. (Doc. 25-1 PageID 407); (Doc. 27-7 PageID 1000). On September 7, 2018, Lieutenant Pohlman and Lieutenant Gerhardt provided Defendant Noel with a copy of the results of their internal investigation. (*Id.* PageID 1003-30). Lieutenant Pohlman and Lieutenant Gerhardt found the following violations against Plaintiff stemming from the June 26, 2018 dispatch: (1) failing to properly respond to an emergency call in violation of Blue Ash Policy; (2) violating traffic laws while not under lights and siren in violation of Blue Ash Policy; (3) failing to be familiar with department policy in violation of Blue Ash policy; (4) failing to properly check and utilize Mobile Audio Video in violation of Blue Ash Policy;[2] and (5) untruthfulness during an investigative interview in violation of Blue Ash Policy. (*Id.* PageID 1018-21).

Lieutenant Pohlman and Lieutenant Gerhardt recommended that Plaintiff be terminated.[3] (Doc. 27-7 PageID 1003-34). This recommendation was based on five of the six official disciplinary actions against Plaintiff between April 2016 and July 2017; the results of the internal investigation into the June 26, 2018 dispatch and the five violations found therein; and the fact that, due the internal investigation's finding that Plaintiff had been untruthful more than once during that investigation, Defendant Blue Ash would have to recommend that Plaintiff be placed on the *Brady* list thus rendering Plaintiff unqualified

---

[2] The internal investigation discovered that, from January 1, 2018 through July 15, 2018, Plaintiff worked a total of 109 days and Plaintiff violated the Blue Ash Policy regarding properly checking the in car camera at the beginning of his shift on all 109 days. (Doc. 27-2 PageID 1002). Plaintiff also violated the Blue Ash Policy requiring the use of a microphone in conjunction with the in car camera on 29 of the 37 traffic stops that he made during the same time period. (*Id.*)

[3] Lieutenant Pohlman and Lieutenant Gerhardt also recommended that Sergeant Charron be terminated. (Doc. 29-1 Noel Decl. ¶ 7); (Doc. 29-7).

to be a witness in court proceedings and unable to fulfill that duty of a police officer. (Doc. 27-7 PageID 1033-34).

On October 2, 2018, Defendant Noel recommended to Defendant Waltz that Plaintiff be terminated in light of the results of the internal investigation. (*Id.* PageID 1000-02). At this point, Plaintiff had the opportunity to attend a pre-disciplinary hearing accompanied by his union representative but waived that opportunity. (Doc. 27 McNeal Depo. PageID 766-67). Additionally, before any pre-disciplinary hearings, Defendant Blue Ash provided Plaintiff, through his union representative, with the option of retirement in lieu of termination. (*Id.* PageID 696-97, 767, 925-27). Plaintiff declined this option.[4] (*Id.*)

On November 28, 2018, Defendant Waltz terminated Plaintiff. (Doc. 25-1 PageID 458). Following Plaintiff's termination, he filed a grievance through his union and the parties went to arbitration. (Doc. 27 McNeal Depo. PageID 769-71). The arbitrator upheld Plaintiff's termination. (*Id.*)

On September 19, 2019, Plaintiff received his Dismissal and Notice of Rights from the U.S. Equal Employment Opportunity Commission. (Doc. 12 PageID 156) (Ex. B). Plaintiff subsequently filed this lawsuit against Defendants Blue Ash, Waltz and Noel. (Doc. 1) (Dec. 17, 2019 Initial Complaint). Plaintiff's operative complaint, his Second Amended Complaint, brings claims under federal and state law for retaliation, racial discrimination, and age discrimination against each Defendant.[5] (Doc. 12).

---

[4] Defendant Blue Ash also provided Sergeant Charron with the option of retirement in lieu of termination, and Charron elected this option. (Doc. 29-1 Noel Decl. ¶ 9).

[5] Plaintiff requests reinstatement and backpay or compensatory damages, punitive damages and attorney's fees and costs. (Doc. 12 PageID 153-54).

II. **ANLAYSIS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, although the court "may consider other materials in the record," it "need consider only the cited materials." FED. R. CIV. P. 56(c)(3).

As an initial matter, Defendants move for summary judgment on all claims. (Docs. 28, 29). Plaintiff's Response in Opposition, however, references only his federal and state age discrimination claims. (Doc. 55). In light of Plaintiff's Response, the Court considers Plaintiff's federal and state retaliation and racial discrimination claims abandoned and will grant Defendants' Motions for Summary Judgment as to those claims. *See Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (affirming finding that party's failure to properly respond to the arguments raised in a motion for summary

judgment constituted an abandonment of those claims).

### a. Ohio Statute of Limitations

Before turning to the merits of Plaintiff's remaining federal and state age discrimination claims, the Court must address Defendants' argument that Plaintiff's Ohio age discrimination claim is time-barred. (Doc. 28 PageID 1084-85).

Ohio law includes two substantive provisions that proscribe age discrimination: Ohio Revised Code § 4112.02 ("Unlawful discriminatory practices") and Ohio Revised Code § 4112.14 ("Discrimination because of age by employers; civil action"). *Taglione v. Charter Commc'ns, LLC*, 842 F. App'x 988, 991 (6th Cir. 2021). At the time that Plaintiff filed his Initial Complaint in this matter, *i.e.*, December 17, 2019, "Section 4112.02 require[d] that the suit be filed 'within one hundred eighty days after the alleged unlawful discriminatory practice occurred.'" *Id.* at 992 n.6 (quoting Ohio Rev. Code § 4112.02(L) (2017)[6]). Section 4112.14, on the other hand, has been interpreted to carry a six-year statute of limitations. *Id.* (first citing *Ahern v. Ameritech Corp.*, 137 Ohio App. 3d 754, 739 N.E.2d 1184, 1202 (2000); and then citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001)); *accord Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 787 (S.D. Ohio 2019) ("Although the statutory text of § 4112.14 does not provide a statute of limitations, courts have found that claims brought under this section are governed by a six-year statute of limitations.") (collecting cases). An employee can proceed with an age-discrimination suit under either statutory provision, but must elect to proceed under only

---

[6] Section 4112.02 was revised and, as of April 15, 2021, carries a two-year statute of limitations. H.B. 352, 133rd Gen. Assemb. (Ohio 2021); *see* Ohio Rev. Code § 4112.052(C)(1); *cf. Erwin v. Honda N. Am., Inc.*, No. 2:20-CV-4350, 2022 WL 3716561, at *10 n.7 (S.D. Ohio Aug. 29, 2022) (explaining that, "[a]s of April 15, 2021, Ohio has a new, overarching two-year statute of limitations for employment discrimination claims," and noting that the new law is not retroactive).

one of the provisions. *Taglione*, 842 F. App'x at 991; *accord* Ohio Rev. Code § 4112.02(L) (2017) ("A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code"); *id.* § 4112.14(B) ("any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (L) of section 4112.02 of the Revised Code.").

Plaintiff's Second Amended Complaint alleges age discrimination under Ohio Revised Code "§ 4112.01, et seq." generally and Ohio Revised Code "§ 4112.02(A)" specifically.[7] (Doc. 12 PageID 153). Accordingly, and contrary to his current argument, Plaintiff elected to proceed under Section 4112.02(A) and is thus subject to its 180-day statute of limitations period. (Doc. 55 PageID 3801-02); *see Taglione*, 842 F. App'x at 991. The latest unlawful discriminatory practice that could have occurred in this matter was Plaintiff's November 28, 2018 termination. (Doc. 25-1 PageID 458). One-hundred and eighty days from November 28, 2018 was May 27, 2019. Plaintiff did not file his Initial Complaint until December 17, 2019. Additionally, Plaintiff had two opportunities to amend the operative complaint in this matter to bring his state age discrimination claim under Section 4112.14, but he did not do so. Plaintiff's state age discrimination claim is time-barred. *See Taglione*, 842 F. App'x at 991.

**b. Defendants Waltz and Noel**

Further, and before turning to the merits of Plaintiff's remaining federal age discrimination claims, the Court must address Defendants Waltz and Noel's argument that they are entitled to summary judgment in their individual capacities because the

---

[7] His Initial Complaint and First Amended Complaint did so too. (Doc. 1 PageID 7); (Doc. 2 PageID 72-73).

Age Discrimination in Employment Act ("ADEA"), under which Plaintiff brings both of the remaining claims, does not impose individual liability on supervisors or managers. (Doc. 29 PageID 1104-05). Plaintiff appears to agree. (Doc. 55 PageID 3802) ("Individual Defendants Chief Scott Noel and David Waltz have argued that they cannot be held individually liable for McNeal's claim. First, they argue that individual supervisors and managers cannot be held liable under the ADEA. But managers may be named in their official capacity."). The Court agrees with Defendants. Plaintiff cannot assert his ADEA claims against Defendants Waltz and Noel, employees of Defendant Blue Ash, in their individual capacities because Waltz and Noel are not employers within the meaning of the ADEA. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (holding that an individual employee or supervisor who does not otherwise qualify as an "employer" under the statute may not be held personally liable under the ADEA); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) (same).

The Court further finds that allowing Plaintiff's remaining ADEA claims against Waltz and Noel in their official capacities, and thus allowing this matter to proceed against Waltz and Noel in their official capacities, in addition to proceeding against Defendant Blue Ash, would be duplicative of Plaintiff's claims against Blue Ash.[8] *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."); *Sack v. Barbish*, No. 1:21-cv-00364-PAB, 2021 WL 4148725, at *4 (N.D. Ohio Sept. 13, 2021); *cf. Kentucky v. Graham*,

---

[8] Plaintiff does not argue that either Waltz or Noel could be considered the alter ego of Blue Ash. *See Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 n.2 (6th Cir. 2001) ("While the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer. This Court has not clearly and definitively ruled on this issue and we need not do so today.").

473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Accordingly, the only remaining claims are Plaintiff's claims for age discrimination and a hostile work environment, each brought under the ADEA, against Defendant Blue Ash.

### c. Defendant Blue Ash

#### i. Age Discrimination

Plaintiff argues that Defendant Blue Ash unlawfully discriminated against him based on age. (Doc. 12 ¶¶ 38-42). The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). By its statutory language, then, the ADEA makes it unlawful for an employer to discharge an employee "because of" age. *Id.*

"Meeting this 'because of' requirement is no simple task." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 211 L. Ed. 2d 281, 142 S. Ct. 461 (2021). A plaintiff "must 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the "but-for" cause of the challenged employer decision.'" *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). "This requires showing that age was the determinative reason they were terminated; that is, they must show 'that age was the "reason" that the employer decided to act.'" *Id.* at 324 (quoting *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014)). "Under *Gross*, satisfying but-for cause requires plaintiffs to show that age *'had a determinative influence on the outcome*' of the employer's decision-making process." *Id.*

(emphasis in original) (quoting *Gross*, 557 U.S. at 176). "So, to defeat summary judgment, [a plaintiff] must show a genuine dispute of material fact that, if resolved in h[is] favor, could persuade a reasonable juror that age was the but-for cause of h[is] termination." *Id.*

As suggested above, in a case involving an alleged violation of the ADEA, a plaintiff can survive a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Id.*; *accord Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). "If a plaintiff cannot show age discrimination with direct evidence, plaintiff[] may attempt to show age discrimination with circumstantial evidence, which [the Court must] evaluate using the three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Pelcha*, 988 F.3d at 324. "This analysis 'first requires the plaintiff to establish a prima facie case of discrimination.'" *Id.* at 324-25 (quoting *Miles*, 946 F.3d at 887). "If the plaintiff succeeds, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination." *Id.* "Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext." *Id.* "If the plaintiff prevails, the factfinder may reasonably infer discrimination." *Id.*

Plaintiff does not present direct evidence of age discrimination and his claim is thus subject to the *McDonnell Douglas* burden-shifting framework. *See id.* at 324.

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show (1) that he is a member of a protected class, *i.e.*, over 40 years old, (2) that he suffered an adverse employment action, (3) that he was qualified for the position, and (4) circumstances that raise a plausible inference of discrimination. *Id.* at 326 (citing

*Geiger v. Tower Auto.*, 579 F.3d 614, 622-23 (6th Cir. 2009)); *accord Pelcha v. MW Bancorp, Inc.*, 455 F. Supp. 3d 481, 502 (S.D. Ohio 2020), *aff'd*, 984 F.3d 1199 (6th Cir. 2021), *opinion amended and superseded*, 988 F.3d 318 (6th Cir. 2021), *and aff'd*, 988 F.3d 318 (6th Cir. 2021).

With respect to satisfying the fourth element of a prima facie case, the plaintiff "must demonstrate circumstances from which a jury could reasonably infer that impermissible discrimination was at the root of [the employer]'s decision to terminate." *Pelcha*, 455 F. Supp. 3d at 502. The typical ways to do so are by showing either that the employer replaced the plaintiff with a younger employee or that the employer treated similar situated, non-protected employees more favorably. *Id.* at 502-03; *Smith v. Advancepierre Foods, Inc.*, No. 1:18-CV-242, 2020 WL 3488580, at *7 n.4 (S.D. Ohio June 26, 2020). Another example of circumstances that support an inference of discrimination in age discrimination cases are "ageist comments—comments that fall short of constituting direct evidence—as potential circumstantial evidence of discrimination." *Pelcha*, 455 F. Supp. 3d at 503 (citing *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 530-31 (6th Cir. 2012)). Regardless of these specific examples, "the fourth prong requires 'circumstances which support an inference of discrimination.'" *Id.* (quoting *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020)).

Defendant Blue Ash concedes the first three elements of a prima facie case and argues that Plaintiff cannot establish the fourth, as he cannot point to a similarly situated individual outside of the protected class that Blue Ash treated more favorably. (Doc. 28 PageID 1086). Plaintiff summarily responds that he has satisfied all four elements to establish a prima facie case, appears to concede that Defendant Blue Ash has provided

a legitimate, non-discriminatory reason for his termination, and provides argument only as to pretext. (Doc. 55 PageID 3769, 3792-95). However, Plaintiff must establish his prima facie case before the Court can address pretext. *Cf. Hunter v. Gen. Motors LLC*, No. 17-10314, 2019 WL 1436847, at *8 (E.D. Mich. Mar. 31, 2019), *aff'd*, 807 F. App'x 540 (6th Cir. 2020), *and aff'd*, 807 F. App'x 540 (6th Cir. 2020) ("The issue of pretext should not be conflated with the fourth element of a prima facie case, where a plaintiff must typically show that her proposed comparators engaged in acts of 'comparable seriousness.'" (quoting *Palmeri v. Goodwill Indus. of Middle Tennessee*, 2018 WL 4030571, at *11, n. 5 (M.D. Tenn. Aug. 23, 2018))).

As best the Court can discern, Plaintiff could believe that he has put forth evidence that his participation in Ohio's DROP program negatively impacted his employment, and that negative impact supports an inference of age discrimination. *See* (Doc. 55 PageID 3779, 3787, 3789-90). Plaintiff, though, fails to provide the Court with any context as to Ohio's DROP program generally; why an employer, or specifically Defendant Blue Ash, would be injured by an employee's participation in the DROP program; or what benefit an employer, or specifically Blue Ash, would obtain by terminating a DROP program participant before eight years of participation in the program. Plaintiff's DROP program argument assumes a truth—that Defendant Blue Ash does not want its police officers participating in the program—without explanation or argument. The Court cannot manufacture arguments on a party's behalf and will not speculate as to the answers to the above questions. Plaintiff's allusion to the DROP program fails to carry his burden of making out a prima facie case. Consequently, even viewing the evidence in the light most favorable to Plaintiff, he has not cited any evidence that creates a genuine issue of

material fact that there were circumstances that support an inference of discrimination. *See Hunter*, 2019 WL 1436847, at *9. As Plaintiff has not established a prima facie case, Defendant Blue Ash is entitled to summary judgment on Plaintiff's federal age discrimination claim.

Even if Plaintiff had stated a prima facie case, his ADEA age discrimination claim still could not survive summary judgment. Defendant Blue Ash has satisfied its burden to offer a legitimate, non-discriminatory reason for Plaintiff's termination, thus shifting the burden back to Plaintiff to demonstrate pretext, as Blue Ash cites the October 2018 Interdepartmental Memorandum from Defendant Noel to Defendant Waltz, recommending Plaintiff's termination, which lists five of the six official disciplinary actions that Blue Ash took against Plaintiff from 2016 through 2017 for violating various Blue Ash Policies and Blue Ash Codified Ordinances along with the five violations found related to the June 26, 2018 dispatch. *See* (Doc. 25-1 PageID 458); (Doc. 27-7 PageID 1000-34).

A plaintiff can demonstrate pretext in one of three ways. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). He can show that the stated reason (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action*. Id.*; *accord Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). Plaintiff concedes that he violated the various policies listed in the October 2018 Interdepartmental Memorandum. He argues that, even though such violations resulting in the disciplinary actions occurred, they were minor and not worthy of termination because younger officers were not disciplined for the same conduct. (Doc. 55 PageID 3793-95). Accordingly, the first way to establish pretext is not a viable path to avoidance of summary judgment for Plaintiff and he relies on the second and third

categories to avoid summary judgment. However, Plaintiff's argument regarding the second way to establish pretext reiterates his DROP program argument and this argument fails for the reasons stated above. *Cf. Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (cleaned up) ("A plaintiff using the second option admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.").

Turning to the third way to establish pretext, this way "generally consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* (cleaned up); *accord Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). Plaintiff must demonstrate that he is similarly situated to the non-protected employees in all relevant respects. *Riley v. PNC Bank, Nat. Ass'n*, 602 F. App'x 316, 321 (6th Cir. 2015) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). "The comparable employees must have 'dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Ercegovich*, 154 F.3d at 352).

Plaintiff cites five examples of younger officers, three-named and two-unnamed, who were not disciplined for individual policy violations that Defendant Blue Ash disciplined Plaintiff for, *e.g.*, failing to respond with lights and sirens, failing to activate

mobile video on a stop, and having a report outstanding. (Doc. 55 PageID 3794-95). Even accepting the testimony of Blue Ash officers about other younger Blue Ash officers' individual policy violations,[9] Plaintiff's argument fails because he does not provide the Court with, or explain why such a comparison is unnecessary, an example of a younger officer with a similar disciplinary background who received less punishment for numerous policy violations in congregate like Plaintiff. Plaintiff does not demonstrate that he is similarly situated to the named and unnamed younger officers in all relevant respects. Stated otherwise, he fails to produce evidence showing that he was treated differently than a similarly situated, younger Blue Ash officer with multiple acknowledged policy violations and resulting disciplinary actions taken against him or her. That Defendant Blue Ash failed to discipline younger officers for individual policy violations does not satisfy Plaintiff's burden to establish pretext via disparate treatment when Blue Ash terminated Plaintiff for multiple policy violations over a two-year period. Accordingly, even if Plaintiff could establish a prima facie case of age discrimination, summary judgment in favor of Defendant Blue Ash is proper because Plaintiff fails to present evidence that raises a triable issue of face with respect to pretext.

### ii. Hostile Work Environment

Workplace discrimination can also occur "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). To

---

[9] The Court will thus deny Plaintiff's Motion to Strike (Doc. 58) as moot.

establish a prima facie case[10] of hostile work environment for age-based harassment under the ADEA, a plaintiff must establish that: (1) he was 40 years or older; (2) he was subjected to harassment, either through words or actions, based on age; (3) the harassment has the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) some basis for liability exists on part of the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).

Plaintiff's assertions of age-based harassment are a "pattern of . . . excessive discipline for minor policy violations which Blue Ash did not exercise against" younger officers and that he "was subject to an adverse job assignment with respect to the traffic study." (Doc. 55 PageID 3799). Defendant Blue Ash argues that Plaintiff fails to establish the second and third elements of a prima facie case of hostile work environment. (Doc. 28 PageID 1090-93); (Doc. 56 PageID 3823-24). The Court agrees that Plaintiff has not put forth sufficient evidence to establish a prima facia ADEA hostile work environment claim because, even assuming that Plaintiff could establish the second element, he cannot establish the third. Plaintiff has not shown that this purported pattern of excessive discipline for minor policy violations against older officers unreasonably interfered with his work performance. *See, e.g.*, *Pawley v. Bel Brands USA, Inc.*, No. 4:18-CV-00129-JHM, 2019 WL 4889265, at *9 (W.D. Ky. Oct. 3, 2019). Plaintiff also fails to establish a link between the assignment of the traffic study and his age or, more relevant to the third element, that this single assignment was objectively severe or pervasive enough to alter

---

[10] "Like discrimination claims, hostile work environment claims are also analyzed under the *McDonnell Douglas* burden shifting framework." *Paschall v. Memphis Light, Gas, & Water Div.*, No. 2:17-CV-02280-MSN-TMP, 2022 WL 106732, at *10 (W.D. Tenn. Jan. 11, 2022) (citing *Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2007)).

the terms and conditions of his employment. *See Gross v. Peoples Gas Light & Coke Co.*, No. 17-CV-3214, 2022 WL 4599369, at *13 (N.D. Ill. Sept. 30, 2022). Defendant Blue Ash is therefore entitled to summary judgment on this claim.

### III. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED** that Defendants' Motions for Summary Judgment (Docs. 28, 29) are **each GRANTED**, and Plaintiff's Motion to Strike (Doc. 58) and Motion for Extension of Time (Doc. 61) are **each DENIED as moot**. The Clerk shall **ENTER JUDGMENT** and thereafter **CLOSE** and **TERMINATE** this case from the Court's active docket.

**IT IS SO ORDERED.**        /s Michael R. Barrett

Michael R. Barrett, Judge
United States District Court